UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JEFFREY SCOTT BRADDOCK,
an individual,

                                     Case No.: 3:26-cv-00925-JEP-PDB

        Plaintiff,

v.

EQUIFAX INFORMATION SERVICES, LLC,
a Georgia limited liability company,
EXPERIAN INFORMATION SOLUTIONS, INC.,
a foreign for-profit corporation,
TRANS UNION, LLC,
a foreign limited liability company, and
WELLS FARGO BANK N.A.,
a national banking association,

        Defendants.
_____/

**PLAINTIFF'S RESPONSE AND OPPOSITION TO ORDER
TO SHOW CAUSE**

Plaintiff, Jeffrey Scott Braddock, by and through undersigned counsel, respectfully submits this Response and Opposition to the Court's Order to Show Cause (Doc. 30), and in support states:

**I. INTRODUCTION**

This case is before the Court on the Court's June 25, 2026 Order (Doc. 30) directing Plaintiff to show cause why this case as to Defendants Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union") (collectively, the

"Bureaus") should not be stayed pending arbitration of Plaintiff's claim against Defendant Wells Fargo Bank N.A. ("Wells Fargo"). (Doc. 30 at 2). Plaintiff does not oppose the stay already entered as to Wells Fargo. Plaintiff and Wells Fargo agreed that the claim asserted against Wells Fargo "is subject to 'an enforceable arbitration provision,'" and asked the Court to close the case "with respect to Wells Fargo only." (Doc. 30 at 1) (quoting Doc. 28). The Court granted that request and stayed "Plaintiff's claim against Defendant Wells Fargo Bank, N.A." pending arbitration. (*Id.* at 2).

The question the Court has posed is narrower than whether the Bureaus must arbitrate anything. No one contends they must. The question is whether the separate, non-arbitrable claims against the Bureaus should nonetheless be stayed while that arbitration proceeds. They should not. No arbitration agreement exists between Plaintiff and any of the three Bureaus. The Bureaus are not signatories to, assignees of, or affiliates of Wells Fargo under the arbitration agreement, and none has claimed a right to enforce it. Each Bureau owes Plaintiff independent statutory duties under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., that have nothing to do with Wells Fargo's furnishing conduct or its arbitration. For the reasons below, the Court should discharge the Order to Show Cause and permit this action to proceed against Equifax, Experian, and Trans Union.

## II. THE WELLS FARGO ARBITRATION AGREEMENT DOES NOT EXTEND TO THE BUREAUS

The stipulation that produced the stay ran between Plaintiff and Wells Fargo only. (Doc. 28; Doc. 30 at 1–2). The credit card agreement underlying that stipulation confirms the arbitration provision's limited reach: it defines a "Dispute" as "any unresolved disagreement between you and the Bank," and

2

provides that "You and Wells Fargo Bank, N.A. (the 'Bank'), including the Bank's assignees, agents, employees, officers, directors, shareholders, parent companies, subsidiaries, affiliates, predecessors and successors, agree that if a Dispute … arises between you and the Bank … the Dispute shall be resolved by" arbitration. Nothing in that provision purports to bind Equifax, Experian, or Trans Union, and none of the three Bureaus is a party to, an assignee of, or an affiliate of Wells Fargo.

The docket confirms as much. Equifax answered the Complaint on May 19, 2026. (Doc. 25). Experian answered and asserted affirmative defenses on June 10, 2026. (Doc. 26). The returns filed as to Trans Union, LLC (Docs. 12, 13) reflect service directed to an incorrect address for its registered agent, and that service did not validly bring Trans Union before the Court. Plaintiff is reissuing and completing proper service on Trans Union's correct registered agent. Trans Union has not appeared, answered, or moved to compel arbitration of any claim against it. None of the three Bureaus has filed anything in this case suggesting that it is a party to, or an intended beneficiary of, the Wells Fargo arbitration agreement, and none is. Because Trans Union is not yet properly before the Court, there is no basis to stay claims against it pending an arbitration to which it has no connection.

"[A]rbitration is a matter of contract [and] the [Federal Arbitration Act's] strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170 (11th Cir. 2011) (quoting *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004)); see Doc. 30 at 1–2 (citing *Lawson* and *Klay* for the same principle in staying the Wells Fargo claim). That same principle forecloses any stay of the claims against the Bureaus. A party cannot be bound to arbitrate a dispute it never agreed to arbitrate, and

3

the Bureaus have shown no basis for treating Plaintiff's claims against them as subject to the Wells Fargo arbitration agreement, because none exists.

## III. THE FEDERAL ARBITRATION ACT DOES NOT REQUIRE STAYING NON-ARBITRABLE CLAIMS SIMPLY BECAUSE ONE DEFENDANT IS ARBITRATING

The Eleventh Circuit has long held that a stay of non-arbitrable claims pending arbitration of a separate claim is discretionary, not mandatory. "For arbitrable issues, the language of [9 U.S.C. § 3] indicates that the stay is mandatory. When confronted with litigants advancing both arbitrable and nonarbitrable claims, however, courts have discretion to stay nonarbitrable claims." *Klay v. All Defendants*, 389 F.3d 1191, 1203–04 (11th Cir. 2004). "In this instance, courts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation. Crucial to this determination is whether arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." *Id.*

That discretionary framework, not the mandatory stay that applies to arbitrable claims themselves, governs Plaintiff's claims against Equifax, Experian, and Trans Union, because those claims are indisputably non-arbitrable: no arbitration agreement binds any of the three Bureaus.

Nor does the FAA's general policy favoring arbitration convert that discretion into an obligation to halt the entire case merely because one defendant is arbitrating. The Supreme Court has made clear that the FAA's purpose is to enforce arbitration agreements according to their terms, not to promote efficiency by consolidating or staying litigation that falls outside those terms. In *Dean Witter Reynolds, Inc. v. Byrd*, the Court held that a district court must compel arbitration of arbitrable claims even though doing so produces "piecemeal" litigation,

explaining that the Court "reject[ed] the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims" and that courts must "rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation." 470 U.S. 213, 219–21 (1985). The same principle cuts against any suggestion that efficiency or consolidation justifies stopping litigation against parties, like the Bureaus, who never agreed to arbitrate anything. If the FAA tolerates, and at times requires, piecemeal proceedings in order to enforce an arbitration agreement, it does not require the opposite: freezing claims against non-signatories merely to avoid two proceedings moving on separate tracks.

## IV. A DISCRETIONARY STAY OF THE CLAIMS AGAINST THE BUREAUS IS NOT WARRANTED

### A. The claims against the Bureaus rest on the Bureaus' own independent statutory duties, not on Wells Fargo's conduct.

The FCRA imposes different obligations on furnishers of information, like Wells Fargo, than it does on consumer reporting agencies, like Equifax, Experian, and Trans Union. Furnishers "are required to (1) report accurate information to CRAs regarding consumers … and (2) conduct an investigation after receiving notice from a CRA of a dispute lodged by a consumer regarding information provided by the furnisher." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018) (citing 15 U.S.C. § 1681s–2). Consumer reporting agencies, by contrast, owe consumers separate duties to follow reasonable procedures to assure maximum possible accuracy, 15 U.S.C. § 1681e(b), and to conduct a reasonable reinvestigation of information disputed by a consumer, *id.* § 1681i. A furnisher's compliance or noncompliance with its own obligations does not determine whether a CRA complied with its separate ones. Whether each

Bureau's own procedures, reinvestigation, and communications with Plaintiff were reasonable is a fact question specific to that Bureau, not a question that turns on what an arbitrator decides about Wells Fargo. See *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288 (11th Cir. 2019) (FCRA liability, including the reasonableness of a defendant's investigation and the willfulness of its conduct, turns on that defendant's own procedures and its own response to the information available to it).

Because the arbitrator in the Wells Fargo proceeding will decide only the claim between Plaintiff and Wells Fargo, that arbitrator cannot adjudicate the Bureaus' liability, cannot bind the Bureaus, and cannot resolve whether the Bureaus complied with their own reinvestigation and accuracy obligations. The second half of the *Klay* inquiry, "whether … the outcome of the nonarbitrable claims will depend upon the arbitrator's decision," 389 F.3d at 1204, thus favors proceeding, not staying.

### B. The arbitrable claim does not predominate.

Three of the four Defendants in this case, Equifax, Experian, and Trans Union, are not arbitrating anything. Only Plaintiff's claim against a single defendant, Wells Fargo, has been committed to arbitration. Staying the claims against the remaining three Defendants because one defendant is in arbitration would subordinate the majority of this case to a proceeding that will resolve none of the majority's claims. That is the opposite of a case in which "arbitrable claims predominate." *Klay*, 389 F.3d at 1204. *Cf. McGriff v. Vystar Credit Union*, No. 3:25-cv-70-TJC-LLL (M.D. Fla. July 22, 2025) (Corrigan, J.) (declining to stay non-arbitrable employment discrimination claims pending arbitration of related account based claims because "the potentially arbitrable claims do not predominate over the employment claims" and directing that the case be bifurcated so the non-arbitrable claims could proceed).

*C. The claims against the Bureaus are severable, and parallel proceedings are feasible.*

This exact scenario recently arose in this District. In *Farrow v. Citibank, N.A.*, the plaintiff brought FCRA claims against a card issuing furnisher and several other defendants, including a consumer reporting agency, arising from the furnisher's alleged failure to reasonably investigate a credit dispute under 15 U.S.C. § 1681s-2(b). No. 8:25-cv-2417-KKM-SPF (M.D. Fla. Feb. 17, 2026). The court compelled arbitration of the plaintiff's claim against the furnisher under an arbitration provision in the furnisher's card agreement, but declined to stay the plaintiff's FCRA claims against the remaining defendants, including the consumer reporting agency, because those claims involved "different accounts with different creditors, as well as separate claims against a credit reporting agency for failure to reasonably investigate." *Id.* The court held that the arbitrable claim against the furnisher did not predominate over the claims against the other defendants and that the outcome of arbitration would not dictate resolution of the nonarbitrable claims, and it therefore permitted the litigation to proceed against every defendant except the one bound by the arbitration agreement. *Id.* The same reasoning controls here. Plaintiff's claim against Wells Fargo as a furnisher is a distinct dispute from Plaintiff's claims against the Bureaus for their own independent reinvestigation and accuracy failures, just as Citibank's furnisher liability was distinct from Experian's in *Farrow*.

Courts applying *Klay* have likewise allowed non-arbitrable claims against one set of defendants to proceed while an arbitrable claim against another defendant is pending, where the claims are severable and parallel proceedings are feasible. In *AXA Equitable Life Insurance Co. v. Infinity Financial Group, LLC*, the court held that non-arbitrable claims against certain defendants need not be

stayed merely because related claims against other defendants were headed to arbitration, because the arbitrable and non-arbitrable claims did not predominate over one another, were "easily severable," and "parallel litigation and arbitration appear[ed] both feasible and preferable to a stay." 608 F. Supp. 2d 1330, 1332 (S.D. Fla. 2009) (applying *Klay*, 389 F.3d at 1203–04). The same is true here. The arbitration concerns Plaintiff's claim against Wells Fargo as a furnisher. This litigation concerns the Bureaus' separate conduct as consumer reporting agencies and their separate statutory obligations under the FCRA. The two proceedings do not overlap in any way that makes parallel proceedings infeasible.

### D. This is not a case, like Laferrera, where the non-arbitrating defendants' liability is derivative of the arbitrating defendant's conduct.

The Eleventh Circuit has found a discretionary stay warranted where the non-arbitrable claims were "based on the exact same factual allegations" as the arbitrable claims and the non-arbitrating defendant "took no action except through, or at the direction of," the arbitrating defendant, such that the non-arbitrating defendant "could not be held liable unless [the arbitrating defendants were] also liable." *Variable Annuity Life Ins. Co. v. Laferrera*, No. 16-14519 (11th Cir. Feb. 27, 2017) (unpublished) (vacating denial of a discretionary stay and remanding with instructions to enter one). That is not this case. Equifax, Experian, and Trans Union did not act through, or at the direction of, Wells Fargo. Each Bureau independently received, processed, and reported the disputed information, and each owed Plaintiff its own duties of accuracy and reasonable reinvestigation under 15 U.S.C. §§ 1681e(b) and 1681i. Unlike the non-arbitrating defendant in *Laferrera*, the Bureaus' liability does not depend on a finding that Wells Fargo is liable; a Bureau can be found to have violated the FCRA regardless of what the arbitrator ultimately decides about Wells Fargo's own furnishing conduct.

Courts in this District apply the same distinction. A stay of non-arbitrable claims is warranted only where the arbitrable and nonarbitrable claims "require determination of the same issues such that related arbitral proceedings and judicial proceedings might reach inconsistent determinations." *Campbell v. Aiva Glob., Inc.*, No. 8:24-cv-02862-MSS-NHA (M.D. Fla. Sept. 29, 2025). In *Campbell*, the court stayed non-arbitrable claims against a non-signatory defendant that involved "the same disputes" as the arbitrable claims, but declined to stay separate, non-overlapping claims against that same non-signatory and a co-defendant, because the arbitrator's findings "cannot bind" parties who are not before the arbitrator. *Id.* Plaintiff's claims against the Bureaus fall on the non-stayed side of that line. They do not require resolution of any issue the arbitrator will decide about Wells Fargo, and the arbitrator's findings on Wells Fargo's furnishing conduct cannot bind Equifax, Experian, or Trans Union in any event.

### E. A stay would prejudice Plaintiff without protecting any interest of Wells Fargo.

A stay of the claims against Equifax, Experian, and Trans Union would delay discovery and resolution of Plaintiff's claims against three Defendants who have shown no entitlement to arbitral delay, while doing nothing to advance or protect the Wells Fargo arbitration, which will proceed on its own track regardless of what happens in this Court. See *Dean Witter*, 470 U.S. at 221. Delay of this kind carries its own cost: as one court in this District has recognized in declining to stay non-arbitrable claims against non-signatory defendants, allowing an action to sit idle pending a separate arbitration risks that "documentation … be lost, witnesses … become unavailable, and memories … fade." *Campbell*, No. 8:24-cv-02862-MSS-NHA. No Defendant, including Wells Fargo, has asked the Court to stay the claims against the Bureaus; the Order to Show Cause followed from the Plaintiff-Wells Fargo stipulation alone, not from

any motion by Equifax, Experian, or Trans Union asserting an entitlement to a stay. (See Docs. 25, 26, 28, 30). To the extent the Court has any concern about overlapping discovery or scheduling between this litigation and the Wells Fargo arbitration, that concern can be managed through ordinary case-management tools, such as coordinated discovery, targeted protective orders, or adjustment of deadlines, rather than a blanket stay of the claims against three Defendants who are not before the arbitrator.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court discharge the Order to Show Cause (Doc. 30) and permit this action to proceed against Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union, LLC.

Dated: July 9, 2026

Respectfully submitted,

**STORY LAW GROUP**

*/s/ Max Story*
**Max Story**
Florida Bar No.: 527238
328 2nd Avenue North, Suite 100
Jacksonville Beach, FL 32250
Telephone: (904) 372-4109
max@storylawgroup.com
*Counsel for Plaintiff*

10

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 9, 2026, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

*/s/ Max Story*
Max Story

11